UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

UPPER PENINSULA POWER
COMPANY, a Michigan corporation

        Plaintiff,

v.                                                              Case No.  2:11-CV-90

JILL SLIGER, JAMES E. REIN,
& LINDA S. REIN,                                     HON. GORDON J. QUIST

        Defendants.
_____/

## OPINION

      This case requires the Court to determine whether a property dispute, which would ordinarily be a matter of state law, is, nonetheless, properly before the Court because it falls within the substantial-federal-question doctrine.  For the reasons set forth below, the Court finds that it does not.

### I. BACKGROUND

      The following facts are taken from the allegations in the Complaint.

      Plaintiff, Upper Peninsula Power Company, is a regulated electric utility that serves approximately two-thirds of Michigan's Upper Peninsula.  Plaintiff owns and operates a series of hydroelectric dams and associated reservoirs in Michigan and Wisconsin known as the Bond Falls Hydroelectric Project (the "Project") and does so subject to the terms and conditions of a license issued to it by the Federal Energy Regulatory Commission ("FERC").  Within the Project boundary is a parcel of land known as Section 7.  Defendants own parcels of real property located in Section 6, which borders Section 7 to the north.  Plaintiff alleges that for a number of years, Defendants and other Section 6 landowners have trespassed and constructed improvements on Plaintiff's Section

7 land.  Although other Section 6 landowners removed the encroachments upon Plaintiff's request, Defendants did not.

On March 8, 2011, Plaintiff filed a complaint asking the Court to issue a mandatory injunction prohibiting the continuation of the encroachments and affirmatively requiring that they be removed from Plaintiff's lands.  Because all parties are citizens of Michigan for purposes of diversity, the complaint does not assert federal jurisdiction on that basis.  Instead, the complaint asserts federal-question jurisdiction, explaining that "[b]ecause the operation of the project and plaintiff's management of the lands located within the project boundary are subject to Federal Regulation, the existence of trespassing use and the claimed existence of an easement by prescription, normally governed solely by State law, raise Federal questions."  (Compl. ¶ 19.)

Defendants contend that the case must be dismissed for lack of subject matter jurisdiction. Defendant Sliger challenges the Court's subject matter jurisdiction in the form of a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(1).[1]  Defendants James and Linda Reins do so in the form of a motion for summary judgment filed pursuant Fed. R. Civ. P. 56, although they have also filed a motion to amend, requesting that the Court consider their motion as having been brought under Rule 56 and/or Rule 12(b)(1).   Because summary judgment represents a decision on the merits, "which courts may render only after jurisdiction has been established," the Court will treat the Reins' motion as a motion to dismiss under Rule 12(b)(1).  *Kirkham v. Societe Air France*, 429 F.3d 288, 294 (D.C. Cir. 2005)*;see also Baker v. Siemens Energy & Automation, Inc.*, 838 F. Supp. 1227, 1229 (S.D. Ohio 1993) (construing the defendant's motion for summary judgment for lack of subject matter jurisdiction as a motion to dismiss under Rule 12(b)(1)) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 at 209 (2d ed. 1990)); *Alloy Cast*

---

[1] Defendant Sliger's motion is labeled "Defendant Lannet's Motion to Dismiss for Lack of Subject Matter Jurisdiction" and indicates that she is now known as Jill Lannet.  Citations to the brief will accord with its label, although the case caption has not been changed.

*Steel Co. v. United Steel Workers of Am.*, 70 F.R.D. 687, 689 (N.D. Ohio 1976) (explaining that summary judgment "is not the proper vehicle for raising issues of jurisdiction" and treating defendants' motion for summary judgment as a motion to dismiss).[2]

## II. MOTION STANDARD

A motion to dismiss under Rule 12(b)(1) may come in the form of either a "facial attack" or a "factual attack." *O'Bryan v. Holy See*, 556 F.3d 361, 375 (6th Cir. 2009). A facial attack "questions merely the sufficiency of the pleadings." *Id.* at 376.

> "[W]hen reviewing a facial attack, a district court takes the allegations in the complaint as true. . . . If those allegations establish federal claims, jurisdiction exists." However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."

*Id.* (internal citations omitted). "A factual attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). With a factual attack, there is no presumption of truthfulness and the district court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.*

The Court construes both motions as presenting facial attacks to the Court's subject matter jurisdiction because in essence, both motions argue that, even if all the allegations in the complaint are true, the claim still does not fall within the Court's subject matter jurisdiction.

---

[2] The Courts notes that, consistent with the allegations in the complaint that Plaintiff notified the Section 6 landowners of the encroachments, the Reins attach to their motion the letters from Plaintiff notifying Defendants of the encroachments and requesting that they be removed. (Def. Reins' Mot. for Summ. J. Ex. 1.) Although supplementing a motion with records outside the pleadings may convert a motion to dismiss under 12(b)(6) into a motion for summary judgment, it does not have the same effect on a motion to dismiss under 12(b)(1). *See Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 916 (6th Cir. 1996); *Leffew v. Kugler*, 220 B.R. 598, 601 (E.D. Tenn. 1998) ("[I]f the parties supplement the record with affidavits and other proof, it does not thereby convert the Rule 12(b)(1) motion into one for summary judgment under Fed. R. Civ. P. 56."); *Tripoli Rocketry Ass'n, Inc. v. United States Bureau of Alcohol, Tobacco & Firearms*, No. 00CV0273(RBW), 2002 WL 33253171, at *3 n.9 (D.C. Cir. 2002) (same); *see also* Fed. R. Civ. P. 12(d) ("If, *on a motion under Rule 12(b)(6) or 12(c)*, matters outside the pleadings are presented and not excluded by the court," the court is to treat the motion as one for summary judgment) (emphasis added).

### III. ANALYSIS

Federal-question jurisdiction exists where the claim "aris[es] under the Constitution, laws or treatises of the United States." 28 U.S.C. § 1331. To determine whether a claim arises under federal law, courts examine the well-pleaded allegations in the complaint, which "must state the existence of a federal question 'unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose.'" *Heydon v. MediaOne of Se. Mich., Inc.*, 327 F.3d 466, 469 (6th Cir. 2003). Most cases brought under federal question jurisdiction are those in which the plaintiff pleads a cause of action created by federal law. *Grable & Sons Metal Prods., Inc.*, 545 U.S. 308, 312, 125 S. Ct. 2363, 2366 (2005). "There is, however, another longstanding, if less frequently encountered, variety of 'arising under' jurisdiction," which is that "in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Id.* at 312, 125 S. Ct. at 2367.

> As an initial proposition, then, the law that creates the cause of action is state law, and original federal jurisdiction is unavailable unless it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded claims, or that one or the other claim is "really" one of federal law. The mere presence of a federal issue in a state law cause of action does not automatically confer federal question jurisdiction . . . .Such jurisdiction remains exceptional and federal courts must determine its availability, issue by issue.

*Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 565 (6th Cir. 2007) (internal quotations and citations omitted). Thus, the Sixth Circuit has explained, to determine whether a state-law created cause of action gives rise to federal-question jurisdiction, the Court must apply a three-part inquiry known as the substantial-federal-question doctrine: "(1) the state-law claim must necessarily raise a disputed federal issue; (2) the federal interest in the issue must be substantial; and (3) the exercise of jurisdiction must not disturb the congressionally approved balance of federal and state judicial responsibilities." *Id.* at 568 (citing *Grable*, 545 U.S. at 314, 125 S. Ct. at 2368).

4

In determining whether a state law claim necessarily raises a federal issue, federal courts look to the plaintiff's statement of his own claim as set forth in the well-pleaded allegations of the complaint. *See Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 13, 103 S. Ct. 2841, 2848 (1983) (explaining that where state law creates the cause of action, "original federal jurisdiction is unavailable unless it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims"); *VA Timberline, LLC v. Appalachian Power Co.*, No. Civ.A. 4:06-CV-00026, at *2 (W.D. Va. July 13, 2006) ("The court determines whether a state law claim necessarily raises a stated federal issue by applying the well-pleaded complaint rule."). For example, in *Grable*, after the IRS seized and sold the plaintiff's real property to satisfy a federal tax delinquency, the plaintiff brought a quiet title action alleging that the purchaser's title was invalid because the IRS had failed to notify the plaintiff of its seizure of the property in the manner required by 26 U.S.C. § 6335. 545 U.S. at 310-11, 125 S. Ct. at 2366. The Court found that because the plaintiff had premised his superior title claim on the failure of the IRS to give adequate notice as required by the federal statute, the meaning of the federal statute was an "essential element" of his quiet title claim and was actually in dispute. *Id.* at 314-15, 125 S. Ct. at 2368. Indeed, the Court explained, the meaning of the federal statute appeared to be the "only legal or factual issue contested in the case." *Id.*

In this case, Plaintiff's cause of action is one for trespass. In Michigan, a claim of trespass requires "proof of an unauthorized direct or immediate intrusion of a physical, tangible object onto land over which the plaintiff has a right of exclusive possession." *Adams v. Cleveland-Cliffs Iron Co.*, 237 Mich. App. 51, 67, 602 N.W.2d 215, 222 (1999). Unlike *Grable*, Plaintiff does not hinge its claim on the interpretation on any federal statute, regulation, or even the FERC license under which Plaintiff operates the Project. To be sure, the complaint references the FERC license and asserts that Plaintiff's operation of the Project and its management of the lands located within the

Project boundary are subject to federal regulation, but it does not allege that any element of its trespass claim actually turns on a federal issue. Thus, unlike cases where courts have found jurisdiction over a state law claim under the substantial-federal-question doctrine, Plaintiff does not allege that a federal issue is an essential element of its claim or is even actually in dispute.[3] *See e.g.*, *Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1234-35 (10th Cir. 2006) (Plaintiff's state law claims, including trespass and unjust enrichment, necessarily raised a disputed federal issue because they all hinged on whether the defendant-railroad's use of its right-of-way over plaintiffs' land exceeded the purpose for which it had been granted under federal land grant statutes, and that, in fact, the construction of the federal land grant appeared to be the only legal or factual issue actually in dispute); *Mikulski*, 501 F.3d at 569-70 (6th Cir. 2007) (Plaintiffs' state law claims for fraudulent misrepresentation and breach of contract necessarily raised a disputed federal issue because plaintiffs' theory required the court to interpret the meaning of a federal statute, namely "whether 26 U.S.C. § 312(n)(1) requires capitalization of only those interest expenses actually incurred after the effective date (as the plaintiffs argue[d]), or if it instead requires capitalization of all accumulated interest expense associated with construction projects that were ongoing as of the effective date (as [Defendant] argue[d])"); *see also VA Timberline,* 2006 WL 1993557, at \*2 (Plaintiff sought a declaration of its rights under an easement, and under state law, such a claim required him to prove the terms of the granting instrument, which happened to incorporate by reference a FERC license; therefore, the terms of the FERC license were an ingredient of the plaintiff's cause of action, appeared on the face of the complaint, were actually in dispute, and, in fact, appeared to be the primary issue contested in the case).

---

[3] In fact, with regard to the FERC license, portions of which Plaintiff quotes in its opposition brief, Plaintiff states that "[t]here are not believed to be any disputes as to the requirements of the license." (Pl.'s Br. in Opp'n to Def. Lannet's Mot. to Dismiss at 10.)

In its opposition briefs, Plaintiff contends that the FERC license and federal statutes and regulations under which it operates the lands "substantially transform the nature of the plaintiff's ownership of the premises and the rights of the defendants as adjacent land owners." To illustrate, Plaintiff asserts that under the terms of the FERC license, it has an affirmative obligation to ensure that any uses or occupancies that it permits on Project lands are exercised "consistent with the purposes of protecting and enhancing the scenic, recreational, and other environmental values of the project." (Pl.'s Br. in Opp'n to Def. Lannet's Mot. to Dismiss at 12.) Plaintiff brought this suit, it argues, because failing to eject Defendants from the land is "tantamount" to an affirmative grant of permission. This, Plaintiff asserts, is an example of how the federal interests in this case "supercede or at least predominate over the principles of state law." (*Id.* at 14.) In addition, Plaintiff argues that federal interests would be unduly impaired if the Court were to permit the defense of adverse possession and that such a defense should be impermissible in cases involving lands held by FERC licensees.

The Court rejects these arguments. Assuming without deciding that Plaintiff was obligated under the license to bring this suit, it does not follow that the license itself alters or impacts any element of its state-law trespass cause of action or that the license itself would need to be interpreted to determine whether a trespass has occurred. Plaintiff's argument for a rule that the defense of adverse possession should not apply to FERC licensees is rejected on two grounds. First, Plaintiff cites no authority for such a rule and the Court is aware of none. *See Empire Dist. Elec. Co. v. Gaar*, 26 S.W.3d 370 (Mo. Ct. App. 2000) (affirming the trial court's ruling that the defendant-landowner had adversely possessed property from which the plaintiff-FERC licensee sought to have the defendant ejected). Second, even if the FERC license could somehow be used to avoid the defense of adverse possession, it would not change the Court's analysis. It is well-established that "a federal court does not have original jurisdiction over a case in which the complaint presents a state-law

cause of action, but also asserts that federal law deprives the defendant of a defense he may raise." *Franchise Tax Bd.*, 463 U.S. at 10, 103 S. Ct. at 2846; *see also Taylor v. Anderson*, 234 U.S. 74, 34 S. Ct. 724 (1914) (explaining that whether a case arises under federal law "must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose"). "Although such allegations show that very likely, in the course of the litigation, a question [of federal law] would arise, they do not show that the suit, that is, the plaintiff's original cause of action, arises under [federal law]." *Franchise Tax Bd.*, 463 U.S. at 10, 103 S. Ct. at 2847.

Because the complaint does not necessarily raise a federal issue that is actually in dispute, the Court need not determine whether the federal interest in the issue is substantial or whether the Court could exercise jurisdiction without disturbing the congressionally approved balance of federal and state judicial responsibilities. *Milulski*, 501 F.3d at 568. In short, Plaintiff has not shown that this case can be "squeezed into the slim category" of cases to which the substantial-federal-question doctrine applies. *See Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701, 126 S. Ct. 2121, 2137 (2006).

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motions and dismiss the complaint.

An Order consistent with this Opinion will be entered.

Dated:  July 5, 2011                                        /s/ Gordon J. Quist
                                                        GORDON J. QUIST
                                                        UNITED STATES DISTRICT JUDGE